Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

United States District Court
Southern District of Texas
FILED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

MAR 2 0 2013

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. **1 3 CR 1 6 7** |
| | § | |
| ANDREA MICHELLE TELLISON | § | 18 U.S.C. §2 |
| Defendant | § | 18 U.S.C. §1347 |
| | § | 18 U.S.C. §1028A |

## INDICTMENT

THE GRAND JURY CHARGES:

### A. INTRODUCTION

**UNSEALED**
**PER ARREST**

At all times material to this indictment:

1.      Title 18, United States Code, Section 24(b) defines a health care benefit program as any public or private plan or contract, affecting commerce, under which any medial benefit, item, or service is provided to any individual, and includes any individual or entity who is proving a medical benefit, item, or service for which payment may be made under the plan or contract. The Medicare Program ("Medicare"), also known as the Federal Health Insurance for the Aged and Disabled Program, and the Texas Medicaid Program ("Medicaid") were health care benefit programs as defined in Title 18, United States Code, Section 24(b).

### B. THE MEDICARE PROGRAM

2.      Medicare was created by the Social Security Act of 1965. The United States Department of Health and Human Services administered the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"). Medicare was comprised of four different parts; however only Medicare Part B was applicable to this case. Medicare Part B was a voluntary insurance program that was financed by premiums paid by enrollees and funds

appropriated by the Federal Government via payroll taxes. Individuals with Medicare Part B insurance, known as "beneficiaries," were entitled, subject to certain terms and conditions, to have payments made on their behalf for covered medical and health services, including medical supplies, appliances, devices, and durable medical equipment.

3.      Providers of supplies and equipment, who enrolled in Medicare and agreed to abide by the Medicare rules and regulations, and federal and state laws, could receive payments from Medicare for items provided to beneficiaries, after the items had been provided. National Supplier Clearing House, Palmetto GBA was contracted by CMS to handle the enrollment of providers of Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS"). Cigna Government Services was contracted by CMS to handle the administration of the claims for DMEPOS in Texas.

4.      Enteral nutrition was a covered item when it was provided in accordance with Medicare rules and regulations. Specifically, Medicare paid for enteral nutrition when it was reasonable and necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member, and when there was a physician order for it. Medicare required providers to have a written, signed, and dated physician order for enteral nutrition before submitting a claim for payment to Medicare, and to maintain all documentation supporting the medical necessity of the enteral nutrition for seven (7) years from the date of service. Additionally, providers were not permitted to automatically dispense enteral nutrition items to beneficiaries on a predetermined regular basis, and were required to contact beneficiaries and caregivers before dispensing supplies and nutrients to determine the minimum quantity needed.

5.      The Healthcare Common Procedure Coding System ("HCPCS") was a standardized coding system used by Medicare and Medicaid to classify medical products for the purpose of efficient claims processing. HCPCS code B4034 was assigned to enteral feeding supply kits for syringe feedings. HCPCS code B4150 was assigned to enteral formula that was administered through an enteral feeding tube. HCPCS code B4154 was assigned to enteral formula for special metabolic needs that was administered through an enteral feeding tube.

## C. THE MEDICAID PROGRAM

6.      Medicaid was a joint federal-state entitlement program that was implemented in 1967 under the provisions of Title XIX of the Social Security Act of 1965. The Texas Health and Human Services Commission ("HHSC") had responsibility for the Medicaid program in Texas. HHSC contracted with the Texas Medicaid and Healthcare Partnership ("TMHP") to administrator Medicaid in Texas. Before its contract with TMHP, HHSC contracted with National Heritage Insurance Company ("NHIC") to administer Medicaid in Texas.

7.      To receive payment from Medicaid a provider of supplies and equipment was required to enroll in Medicaid and agree to abide by the Medicaid rules and regulations, and federal and state laws. As with Medicare, enteral nutrition was a benefit under Medicaid when it was medically necessary. Medicaid claims for beneficiaries with Medicare coverage were called cross-over claims and subject to the Medicare rules and regulations. Medicaid was considered secondary insurance for cross-over claims and paid the Medicare deductible and coinsurance liabilities.

3

## D. THE DEFENDANT

8.      ANDREA MICHELLE TELLISON, ("TELLISON"), defendant herein, at all times relevant was a resident of the state of Texas, and a co-owner and manager of Texas Durable Medical Company ("Texas Durable").

9.      Texas Durable was a business located in Houston, Texas that purported to provide durable medical equipment ("DME") including enteral nutrition and supplies to Medicare and Medicaid beneficiaries.

### E. COUNTS ONE - FOURTEEN
### Health Care Fraud
### Title 18, United States Code, Sections 1347 and 2

### INTRODUCTION

10.      Beginning on or about March 29, 2008 and continuing thereafter to on November 30, 2009, in the Houston Division of the Southern District of Texas and elsewhere,

### ANDREA MICHELLE TELLISON,

defendant herein, did aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud health care benefit programs, namely the Medicare and Medicaid programs, and to obtain money and property owned by and under the custody and control of Medicare and Medicaid by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

### PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

11.      It was the purpose of the scheme and artifice to unlawfully enrich the defendant by submitting and causing to be submitted, false and fraudulent claims for payment to Medicare and Medicaid for medical supplies, appliances, devices, and durable medical equipment,

4

including enteral nutrition and enteral nutrition feeding kits containing syringes, that were not ordered by physicians, not medically necessary, and not delivered to beneficiaries.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The manner and means of the conspiracy included, but were not limited to, the following:

12.    TELLISON would and did co-own a durable medical supply company identified as Texas Durable Medical Company.

13.    TELLISON would and did sign an agreement with Medicare stating she would "not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

14.    TELLISON would and did sign an Electronic Data Interchange Enrollment Agreement agreeing to submit claims to Medicare that were accurate, complete, and truthful.

15.    TELLISON would and did submit and cause to be submitted to Medicare and Medicaid false and fraudulent claims for payment for medical supplies, appliances, devices, and durable medical equipment that were:

a) Not provided;

b) Not ordered by physicians; and

c) Not medically necessary.

16.    TELLISON would and did sign her name on CMS form 10126 and falsely indicate:

a) That there was documentation in medical records that supported the delivery of enteral nutrition when there was no such documentation;

5

b) That enteral nutrition was being administered via tubes such as gastrostomy tubes, jejunostomoy tubes, and nasogastric tubes, when it was not; and

c) That enteral nutrition was being administered via syringes when it was not.

17.    TELLISON would and did fail to purchase sufficient inventory of enteral nutrition and supplies to deliver all the enteral nutrition and supplies billed to Medicare and Medicaid.

18.    TELLISON would and did bill Medicare and Medicaid for enteral nutrition to be administered through an enteral feeding tube under the HCPCS codes B4150 and B4154 and delivered enteral nutrition that expressly stated "not for tube feeding" on the label.

19.    TELLISON would and did unlawfully use, without authorization, Medicare and Medicaid beneficiary identification numbers, and Universal Provider Identification Numbers to bill Medicare and Medicaid for false and fraudulent enteral nutrition claims.

20.    TELLISON would and did bill, and cause to be billed, Medicare and Medicaid for approximately $1,480,511.31 worth of enteral nutrition and supplies under codes B4034, B4150, and B4154, between March 29, 2008 and November 30, 2009, and received approximately $700,341.57 from Medicare and $85,880.54 from Medicaid as payment for those claims.

## EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

21.    On or about the dates set forth in the counts below, in the Houston Division of the Southern District of Texas, and elsewhere,

### ANDREA MICHELLE TELLISON,

defendant herein, aided and abetted by others known and unknown to the Grand Jury, executed and attempted to execute the above described scheme and artifice to defraud a health care benefit

program, by submitting and causing to be submitted false and fraudulent claims to Medicare and

Medicaid, including those described below:

| C O U N T | Name | Medicare Claim Number | Medicare Claim Received | Alleged dates of service | Amount Billed | Amount Paid M/care M/caid* | Nature of Falsity, Included but Not Limited to |
|---|---|---|---|---|---|---|---|
| 1 | A. A. | 08154789889 | 06/02/08 | 05/27/08 thru 06/26/08 | $222.30 | $157.20 | Supplies not provided, and not medically necessary |
| 2 | A. A. | 09029790442 | 01/29/09 | 01/27/09 Thru 02/26/09 | $196.50 | $142.32 | Supplies not provided, and not medically necessary |
| 3 | J. C | 08254721988 | 09/10/08 | 09/08/08 Thru 10/07/08 | $196.50 | $157.20 $39.30 * | Supplies not provided, and not medically necessary |
| 4 | J. C. | 09160731672 | 06/09/09 | 05/19/09 Thru 06/18/09 | $196.50 | $142.32 | Supplies not provided, and not medically necessary |
| 5 | J. K. | 08163749974 | 06/11/08 | 05/23/08 Thru 06/22/08 | $222.30 | $157.20 | Supplies not provided, and not medically necessary |
| 6 | J. K. | 08239827754 | 08/26/08 | 08/23/08 Thru 09/22/08 | $222.30 | $157.20 | Supplies not provided, and not medically necessary |
| 7 | D. M. | 08182808116 | 06/30/08 | 06/13/08 Thru 07/12/08 | $222.30 | $157.20 $39.30* | Supplies not provided, and not medically necessary |
| 8 | D. M. | 09015783466 | 01/15/09 | 01/13/09 Thru 02/12/09 | $196.50 | $142.32 $35.58* | Supplies not provided, and not medically necessary |
| 9 | S. R. | 08235798639 | 08/22/08 | 08/02/08 Thru 09/01/08 | $222.30 | $157.20 $35.58* | Supplies not provided, and not medically necessary |
| 10 | S. R. | 09152723878 | 06/01/09 | 05/02/09 Thru 06/01/09 | $196.50 | $142.32 $35.58* | Supplies not provided, and not medically necessary |
| 11 | V.W. | 08200808078 | 07/18/08 | 06/16/08 Thru 07/15/08 | $222.30 | $157.20 | Supplies not provided, and not medically necessary |
| 12 | V.W. | 09021771762 | 01/21/09 | 01/16/09 Thru 02/15/09 | $196.50 | $142.32 | Supplies not provided, and not medically necessary |

| 13 | C. W. | 08225816030 | 08/12/08 | 08/11/08 Thru 09/10/08 | $222.30 | $157.20 | Supplies not provided, and not medically necessary |
| 14 | C. W. | 09160731703 | 06/09/09 | 05/23/09 Thru 06/22/09 | $196.50 | $142.32 | Supplies not provided, and not medically necessary |

All in violation of Title 18 United States Code, Sections 1347 and 2.

## F. COUNTS FIFTEEN THROUGH TWENTY-ONE
### Aggravated Identity Theft
### 18 U.S.C. §1028A

22.    The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the information contained in paragraphs 1 – 9, and 12 – 20, of Counts One through Fourteen of this Indictment.

23.    On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere,

**ANDREA MICHELLE TELLISON,**

defendant herein, did knowingly possess and use without lawful authority, a means of identification of another person, namely the Unique Physician Identification Number (UPIN) of a physician to submit a false and fraudulent claim to Medicare for payment, during and in relation to violations of Title 18, United States Code, Section 1347, specifically health care fraud, in violation of Title 18, United States Code, Section 1028A.

| COUNT | Type of ID used without authority included | Date of Unauthorized Possession, and Use | Owner of Identification | Nature of Unauthorized and Unlawful Use of Identification, Included but Not Limited to: |
| --- | --- | --- | --- | --- |
| 15 | UPIN | 06/02/08 | Dr. Henry Z. | Used to submit false claim for B4034 under Medicare number of A. A. |
| 16 | UPIN | 09/10/08 | Dr. Akram S. | Used to submit false claim for B4034 under Medicare number of J. C. |
| 17 | UPIN | 08/26/08 | Dr. Charita L. | Used to submit false claim for B4034 under Medicare number of J. K. |

| 18 | UPIN | 06/30/08 | Dr. Matt J. | Used to submit false claim for B4034 under Medicare number of D. M. |
| 19 | UPIN | 08/22/08 | Dr. Margaret E | Used to submit false claim for B4034 under Medicare number of S. R. |
| 20 | UPIN | 07/18/08 | Dr. Shelley M. | Used to submit false claim for B4034 under Medicare number of V. W. |
| 21 | UPIN | 06/09/09 | Dr. Lawrence N | Used to submit false claim for B4034 under Medicare number of C. W. |

All in violation of Title 18 United States Code, Sections 1028A.

## G. NOTICE OF CRIMINAL FORFEITURE

### 18. U.S.C. § 982(a)(7)

24.     Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendant

### ANDREA MICHELLE TELLISON,

that upon conviction of the offenses charged in this Indictment in Counts 1-14, the United States intends to seek forfeiture of all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses.

### MONEY JUDGMENT

25.     Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is at least $786,222.11.

### SUBSTITUTE ASSETS

26.     In the event that the property subject to forfeiture, as a result of any act or omission by any Defendant,

    a.  cannot be located upon exercise of due diligence;

    b.  has been transferred or sold to, or deposited with a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value, or

9

e. has been comingled with other property which cannot be divided without difficulty,

it is the intention of the United States to seek forfeiture of any other property of the Defendant up to the value of such property, pursuant to Title 21, United States Code 853 (p), incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY